

**SIGNED this 16 day of August, 2005.**

_____
**FRANK R. MONROE
UNITED STATES BANKRUPTCY JUDGE**

_____

```
                 UNITED STATES BANKRUPTCY COURT
                   WESTERN DISTRICT OF TEXAS
                         AUSTIN DIVISION
IN RE:                          )
                                )
MICHAEL D. GEORGE               ) CASE NO. 04-11631-FM
              DEBTOR            ) (Chapter 7)
                                )
_____ )
RONALD E. INGALLS, TRUSTEE      )
              PLAINTIFF         )
VS.                             ) ADVERSARY NO. 05-1006-FM
                                )
MICHAEL D. GEORGE               )
              DEFENDANT         )
```

### MEMORANDUM OPINION

The Court held a trial of the above entitled and numbered adversary proceeding on August 9, 2005. The issues tried were whether the Debtor should be denied a discharge under 11 U.S.C. §§ 727(a)(2),(3),(4)(A) and/or (5). It is, therefore, a core proceeding under 28 U.S.C. §157(b)(2). This Court has jurisdiction to enter a final order under 11 U.S.C. §1334(a) and (b), 28 U.S.C. §157(a) and (b)(1), 28 U.S.C. §151 and the Standing Order of Reference of all bankruptcy matters to this Court by the United States District Court for the Western District of Texas. This

1

Memorandum Opinion shall constitute findings of fact and conclusions of law under Bankruptcy Rule 7052.

## SETTING THE STAGE

Michael George, the Debtor herein, was the 100% shareholder and the person in total control of the business affairs of both CKG Energy, Inc. [pending in this Court under Case No. 04-11551-FM] and CKG Pipeline, L.L.C. [pending in this Court under Case No. 04-12339-FM]. Both CKG cases have been consolidated administratively under Case No. 04-11551-FM and will be referred to herein simply as CKG.

Plaintiff, Ronald E. Ingalls, Trustee, is the Chapter 11 Trustee for CKG.

George has for many years been a promoter in the oil and gas industry. His modus operandi has been to get individuals to invest in joint venture drilling programs he has promoted through various different corporate entities that he owned and controlled over at least the past fifteen years. His investors have not met with great success although Mr. George has been able to live quite well off of the investments people have made with him.

Examples of his lack of success are the following:

1. Judgment and Order of Severance (Exhibit P-35) entered in Cause No. 98-11-11118, styled *Ayers, et al v. George and Trump Energy, Inc.* and Cause No. 98-11-11118-A, styled *Rose Prestka, et al v. Michael George and Trump Energy, Inc.*, in the 135th Judicial District Court of Jackson County, Texas on May 17, 1999, which Judgment determined that the Defendants' [Michael George and Trump

2

Energy (a corporation owned and wholly controlled by Mr. George)] made certain misrepresentations and omissions of material fact in the sale of securities to the intervenors therein which "constitute actual fraud, ....". Judgment was entered against Mr. George and Trump Energy in the amount of $1,560,980.00.

    2. Mr. George is the subject of cease and desist orders issued by various state securities agencies as follows:

    A) August 15, 1990, Order of Prohibition, Wisconsin, docket No. X-90037(E).

    B) January 5, 1991, Permanent Cease & Desist Order, Montana Securities Dept., Docket #8-16-90-23.

    C) January 27, 1998, Cease & Desist Order, Pennsylvania Securities Commission, Administrative Proceeding Docket No. 9801-09.

    Virtually all of the money spent by Mr. George in the operations of CKG was investor money. Less than 1% of all funds received by CKG came from actual production of producing wells. The securities sold by Mr. George through CKG were unregistered. The investors in CKG have not seen a return of even one penny on their investment. Mr. George is a prime example of why state governments have established securities regulation agencies.

    None of the leasehold interests acquired by CKG were actually put into the name of the joint ventures into which investors invested.

    All of the money invested by the investors was for the most part put into one account in the name of CKG.

    Mr. George lived out of the operating account of CKG. He

neither took a salary nor accounted for expenses. He simply had checks written to him or for his benefit pretty much on a daily basis as he solely directed. He acted as if the money in the CKG accounts that came from CKG joint venture investors was his own.

Obviously, not all of the money received from the joint venture investors was used for joint venture purposes. Therefore, CKG ran out of money before it could meet all of its drilling obligations under the various joint venture agreements. CKG is in material default to all of its investors.

Mr. George is the proverbial hog feeding at the trough of investors' money without any real regard for the investors' rights. Mr. George is the ultimate smooth talker who should not be trusted with one single tiny nickel.

Mr. George was in an automobile accident on or about May 20, 2001. As a result of the accident, he lost his sight. Mr. George claims that his blindness is the primary cause of any deficiencies that occurred in the operation of CKG and/or in the filing of the schedules and statements of affairs and other documents in his own personal Chapter 7 bankruptcy case.

However, the evidence shows that Mr. George's conduct in living out of his various corporate bank accounts was exactly the same before he became blind as afterward. Mr. George has a history of not having or using a personal bank account. He has always handled his personal finances on two bases: 1) spending cash taken from the bank accounts of corporations he owned and controlled; and 2) directing whatever corporation he at any point in time controlled to write large checks for his benefit. The evidence

reflects that in 2001, $235,000.00 of CKG investor money was spent by Mr. George for his own personal benefit. In 2002, the number escalated to $773,000.00. In 2003, hampered by the fact that investor money was running low, Mr. George was only able to spend $289,000.00 on his own personal affairs.

Exhibit P-4 contains all of the various checks written on CKG for Mr. George's benefit. They include among other things ad valorem taxes on his personal home, payment to the Internal Revenue Service on personal taxes, payments on his personal MasterCard, purchase of a business originally called "Flowers by George" for his daughter Tracy George, payments to his daughter Courtney George, his father David George, his nephew Nick George, and his ex-wife Kellie George, all of whom were allegedly "employees" of CKG but whose primary functions were to serve as personal assistants to Mr. George because of his blindness (it should be noted that none of the payments to any of these people reflect any IRS or Social Security withholding), payment of personal cable bills and personal telephone bills, payment for substantial improvements to Mr. George's house, purchase of a four-wheeler, purchase of a Mercedes-Benz, payment of City of Austin personal utilities, payment of his ex-wife's credit cards, payment for groceries, payment of Hills of Lakeway membership monthly fees for his son's membership, payment of personal dry cleaning, purchase of boats and jet skis owned by Mr. George, payment of personal child support, payments to Bear Stearns for personal stock investments, payment of in excess of $150,000.00 to his parents' automobile company, payment of his parents' home mortgage payments, and on and

on and on. The gory details and the specific amounts as to each category are found in Plaintiff's Exhibits 9A, 9B, 9C, 10A, 10B, 10C, 10D, 11, 12, 13, 14, 15, 15E, 18, 19, 20, 21, 22 and 23.

However, the egregiousness of the above outlined conduct of Mr. George has very little to do with the merits of the lawsuit tried. The foregoing does, however, establish that CKG has a claim against Mr. George as that term is defined under 11 U.S.C. §101(5) and that the Plaintiff, therefore, has standing to pursue its complaint against Mr. George seeking denial of his discharge. Additionally, the actions of Mr. George as outlined above also serve to raise doubt as to Mr. George's credibility.

## **FACTS SPECIFIC TO THE COMPLAINT**

Mr. George, through CKG, purchased a business called "Flowers by George" with CKG investor funds and put it in his daughter's name. Unfortunately, the record falls short of establishing that Mr. George actually has, or ever had, an ownership interest in this business.

Mr. George owns two jet skis which were not scheduled.

Mr. George has not filed tax returns for either of the years 2003 or 2004. Further, he has produced virtually no personal records from which his schedules, or his testimony, can be verified or his true financial condition ascertained. Mr. George claims all of his personal records were in the records of CKG turned over to Plaintiff as CKG's trustee. The Trustee testifies, however, that the only records of Mr. George that he found were certain of his medical records. That is clearly consistent with the fact that Mr. George never maintained any bank accounts and operated solely by

6

either paying cash [obtained from CKG] for everything or by having CKG (or prior corporations) write checks for whatever he wanted to pay for or acquire.

Part of the evidence is a financial statement dated May 31, 2002. It obviously contains inflated values in various respects. The Trustee says that the very existence of this financial statement shows a violation of Section 11 U.S.C 727(a)(5). However, no one asked Mr. George any material questions with regard to the financial statement. Neither the Trustee nor his own counsel. Therefore, it's hard to judge whether the Debtor has failed to explain a loss of assets by solely looking at the May 31, 2002 financial statement as his bankruptcy petition was filed almost 23 months later and no one asked him a single question about the assets listed thereon.

## CONCLUSIONS OF LAW

1. <u>11 U.S.C. §727(a)(2)(A).</u> The Trustee claims that "Mr. George, with the intent to hinder, delay, or defraud the creditors and/or an officer of the estate transferred, concealed, destroyed, mutilated or removed property of the Debtor or permitted same to occur within one (1) year of the Order for Relief." However, the First Amended Complaint is slim on details. Clearly all of Mr. George's misdeeds with regard to the cash which CKG received from investors in its drilling programs have nothing to do with whether Mr. George has concealed property from his estate's trustee. Section 727 requires that the Trustee prove that Mr. George has fraudulently conveyed or secreted personal assets. The only

7

evidence that this occurred is that George owns two jet skis that were not scheduled.

With regard to the business known as "Flowers by George", the evidence in the record shows that Mr. George used investors' money to buy this business for his daughter. There is no evidence that he owns it himself.

The allegations that Mr. George owns a Bar/Restaurant located in Costa Rica valued at $250,000.00 and perhaps another boat valued at $200,000.00 are simply not substantiated by any evidence in the record.

So, the question for the Court is whether Mr. George's failure to disclose on his schedules two jet skis, which his daughter testified he had owned for some time and that are currently in his garage, is a violation of 11 U.S.C. §727(a)(2)(A) which requires the denial of his discharge. These two jet skis were made by Yahama and were acquired by George from Woods Fun Center, Inc. in August 2002 for $7,600.00 and $6,882.00 respectively.

The record did not establish why a blind man needs two jet skis. However, they are clearly his. He had to know that they were his. He had owned them for less than 2 years when he filed his sworn schedules which makes no mention of them. They are in his garage. He did not schedule them. He has yet to amend his schedules to include them.

The burden of proof under 11 U.S.C. §727(a)(2) is on the party who brings the objection to discharge. Rule 4005, *Federal Rules of Bankruptcy Procedure*. Additionally, it is required that all

subsections of Section 727 be construed liberally in favor of the debtor and strictly against the creditor as part of the "fresh start" policy. *In re Adleman,* 541 F.2d 999, 1003 (2nd Cir. 1976). The objecting party must demonstrate under the statute that the debtor has either transferred, removed, concealed, destroyed or mutilated property of the debtor in the year immediately preceding the filing of the petition or property of the estate after the filing of the petition with the intent to hinder, delay or defraud a creditor. 11 U.S.C. §727(a)(2)(A) and (B). The preponderance of the evidence burden of proof applies. *Grogen v. Garner,* 498 U.S. 279 (1991). Once a prima facie case is established by the objecting party, the burden shifts to the debtor. *In re Hawley,* 51 F.3d 246, 249 (11th Cir. 1995).

In this case, George knew that he owned two jet skis that he had purchased for a total consideration of almost $15,000.00 only a short year and one-half before the petition date. He knew they were in his garage. He failed to disclose them on the schedules. Those facts, together with his general mode of operation as outlined in specific herein above and his lack of credibility, lead the Court to conclude that the Plaintiff has met his burden of establishing a prima facie case that George, with the intent to hinder, delay or defraud his creditors, concealed the existence of the two jet skis, which became property of the estate after the date of the filing of the petition initiating this case.

In fact, George never explained why these two items were left off his schedules. Further, he did not explain why his schedules

9

have not, to date, been amended to include them. George's testimony was simply silent on this point. Accordingly, George has failed to rebut the prima facie case established by the Plaintiff.

The only conclusion is that the Debtor has willfully, and with the intent to defraud his creditors, concealed this property of his bankruptcy estate.

2. <u>11 U.S.C. §727(a)(3)</u>. This one is even easier. The evidence reflects that George basically maintained no personal records and never has. As alleged in the First Amended Complaint, George testified at his Rule 2004 examination that he had no personal bank accounts and no recollection of the last time he had maintained a personal bank account and that all of his personal banking business was conducted through the various corporate entities that he had owned and operated over the years. George and all witnesses with knowledge admitted this was true. Since George has no personal records from which his transactions can be reconstructed or his true financial picture garnered or his testimony verified, his alleged defense that all of his personal financial records were turned over to the Plaintiff because they were part of the records of CKG rings very hollow.

Further, George has not completed and filed either his 2003 or 2004 Income Tax Return. Presumably, this is because he has no records from which it can be ascertained what his income, in fact, was for those years.

George's mode of operation, not only during the time of CKG but for years prior, establishes that he has never maintained

personal records.  Obviously, if one does not maintain personal records, one cannot have his personal financial affairs either traced or determined with any degree of accuracy.  His failure to keep and maintain the basic normal records is not excused by his blindness.  This is his mode of operation and has been so since long before his blindness occurred in 2001.

"In order to state a prima facie case under §727(a)(3), a creditor objecting to discharge must show (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions."  *The Cadle Company v. Terrell,* 2002 W.L. 22075 (N.D. Tex. Ft. Worth Div. 2002) citing *Meridian Bank v. Alten,* 958 F.2d 1226, 1230 (3rd Cir. 1992).  Once these factors have been proven, the burden shifts to the debtor to prove that his failure to keep adequate records "was justified under the circumstances."  *In re Cox,* 41 F.3d 1294, 1297 (9th Cir. 1994).

The Debtor proffered only two justifications for not keeping normal records.  First, that's the way he'd always done business. That is no justification at all.  Second, his blindness. However, his blindness was not the cause of George's failure to keep personal financial records.  He admitted he had always done business that way.  It is obviously a willful decision that he had made long ago.  After all, living out of corporations which he owned and controlled certainly makes it harder, if not impossible, to figure out where the money went and what it was spent for.  It

also makes it almost impossible to determine whether or not what was purchased was in fact owned by the Debtor or other parties he claims owns the assets the money was spent to obtain.

Mr. George is the poster child for a violation of 11 U.S.C. §727(a)(3).

3. <u>11 U.S.C. §727(a)(4)(A)</u>. Mr. George made a false oath when he knowingly omitted from his schedules his ownership of the two Yahama Jet Skis. Plaintiff has the burden of proving George made a false statement under oath which was material to his bankruptcy case and he made it with fraudulent intent. *In re Beaubouef,* 966 F.2d 174, 178 (5th Cir. 1992). Here, it is undisputed that the schedules George filed were made under oath and that they were materially false because they failed to disclose Mr. George's ownership of two jet skis he bought approximately a year and a half prior to the petition date for a total of approximately $15,000.00 and which were then, and still are, in his garage. The only real issue is whether George's actions were taken "with fraudulent intent - or reckless indifference to the truth" which can, of course, be proven by circumstantial evidence. *Avpauvy v. Chastant (In re Chastant),* 873 F.2d 89, 91 (5th Cir. 1989); *Beaubouef,* 966 F.2d at 178. The Debtor made no explanation as to why these two jet skis were left off his schedules. The only rational conclusion is that their omission from the schedules was made with the requisite fraudulent intent as required by §727(a)(4)(A).

4. <u>11 U.S.C. §727(a)(5)</u>. The only evidence produced by the Trustee in support of his allegation that the Debtor has failed to

satisfactorily explain the loss of assets to meet his liabilities was the personal financial statement of May 31, 2002, made some 23 months prior to the date of the involuntary petition being filed against him. As reflected above, no one asked him one single question with regard to the contents of such statement or where the property set forth thereon went. In fact, the only questions asked Mr. George with regard to any assets that he may or may not have owned personally prior to bankruptcy were with regard to the business known as "Flowers by George", the alleged Bar/Restaurant in Costa Rica, the boat he mortgaged/sold on December 3, 2003 [the proceeds of which he put into CKG], and the "perhaps another boat valued at $200,000.00". The Trustee has simply failed in his burden under this subsection of section 727. That, of course, is not surprising since the Debtor has kept virtually no records to reflect his own personal finances for probably in excess of 15 years. It's hard to prove that someone has failed to explain the loss of assets when it's impossible to prove what they owned in the first place because of the complete and total lack of records maintained by the Debtor for any significant time. Accordingly, even though the Trustee must lose on this count, it is understandable. And, that is most likely why the drafters of the Code placed §727(a)(3) into the Code.

    For the foregoing reasons, the Debtor must be denied his discharge under 11 U.S.C. §§727(a)(2)(A), (3) and (4)(A). An Order of even date will be entered herewith.

                                          ###